W. H. JONES, Appellee, v. COUNTY OF WOODBURY, Appellant.

**COUNTIES: Compensation of Officers—Residence for Sheriff.** A sheriff is "furnished" a residence, within the meaning of Par. 11 of Sec. 5226, Code of 1924, when the county provides in the courthouse appropriate living quarters which are available to the sheriff as living quarters for himself or, at his election, for his jailer.

**TRIAL: By Court—Presumption Attending Findings.** A finding by the trial court on practically undisputed facts that the county had not "furnished" sheriff a residence, as required by law, carries no "jury" presumption on appeal.

Headnote 1:   35 Cyc. p. 1590 (Anno.)   Headnote 2:   4 C. J. p. 775
(Anno.); 38 Cyc. p. 1980.

*Appeal from Woodbury District Court.*—A. O. WAKEFIELD,
Judge.

MARCH 17, 1925.

ACTION brought by plaintiff, sheriff of defendant county
during the years 1920 and 1921, to recover $300 per year on
account of alleged failure of the county to furnish him a resi-
dence during the said two years. A jury was waived, and the
case tried to the court. The issues were found with plaintiff,
and judgment was entered against the county, from which it
appeals.—*Reversed.*

*O. T. Naglestad, Alfred Pizey,* and *Ray E. Rieke,* for ap-
pellant.

*Jepson, Struble, Anderson & Sifford,* for appellee.

ARTHUR, J.—I. The action was brought under Section 4 of
Chapter 293 of the Acts of the Thirty-eighth General Assembly,
which reads:

"In counties where the sheriff is not furnished a residence
by the county an additional sum of $300 per annum shall be
allowed."

The evidence consisted of the testimony of plaintiff, for him-
self, and of a member of the board of supervisors on behalf of
the county. Regarding most of the facts, the testimony is in
practical harmony, from which it may be stated
that, during the years 1920 and 1921, plaintiff
was the sheriff of defendant county, and went
out of office at the end of the year 1921; that, during the time
he was sheriff, he did not live in quarters furnished by the
county, but resided elsewhere with his family in a five-room
modern dwelling house, owned by his wife. There was a living
apartment in the courthouse, consisting of a living room, a bed-
room, bathroom, some closets, an office room, and a large dormi-
tory. These rooms were located on the third floor of the court-

1. COUNTIES: com-
pensation of of-
ficers: residence
for sheriff.

house, above the sheriff's office, which was on the second floor. There was no kitchen separate from the other rooms, but in the living room were a sink and a connection for a gas stove. These rooms were provided with heat, electric light, and gas. Practically all of said rooms were outside rooms. These living quarters were occupied during the two years by the jailer and his family. The jailer's wife was the jail matron, and lived with her husband in the quarters above described. The jailer was a deputy sheriff, appointed and paid by the sheriff. The jail matron, the jailer's wife, was paid by the county.

Plaintiff testified that the living rooms in the courthouse were never proffered to him, or any arrangements made for him to occupy them. Asked if he did not know that the rooms were there for the use of the sheriff's office, he answered:

"They were there for the use—what I supposed—for the jailer."

A member of the board, Carrington, testified that the rooms above mentioned, including the dormitory, were occupied by the jailer and his wife; that there was no other room provided for the matron in the courthouse to live in; that there was no request for any other room; that there were other rooms vacant which the matron could have occupied in the daytime; that she was not required to be in the courthouse at night; that she had no duties as matron to perform at night, and could have lived outside of the courthouse, away from the jail.

The trial court found that defendant county "failed to furnish the plaintiff as such sheriff a place of residence, as contemplated by the statutes of the state of Iowa in such cases, and that the living quarters in connection with the county jail in the courthouse of said county were assigned and occupied by the jailer and jail matron of said sheriff's office during the said years of 1920 and 1921."

II.    Errors relied upon for reversal are that the court erred in finding that appellant failed to furnish appellee a place of residence, as contemplated by the statute, and in entering judgment upon said finding in favor of appellee.

III.    Appellant's position is that, by furnishing living quarters in the courthouse that were occupied by the jailer, who was the deputy of the sheriff, paid by the sheriff, and whose

duties were solely that of jailer, the county furnished the sheriff a place of residence.

Appellee insists that the finding of the trial court has in its favor the same presumption, on appeal, as is entertained in favor of the verdict of a jury. Counsel's position would be correct, so far as findings of fact in a law action by the trial court are concerned. But the finding of the trial court that the county did not furnish to appellee a residence, etc., was a conclusion of law, arrived at on practically undisputed facts.

2. TRIAL: by court: presumption attending findings.

Section 501, Code of 1897, provides:

"He [the sheriff] has the charge and custody of the jail or other prison of his county, and of the prisoners in the same, and shall receive those lawfully committed, and keep them himself, or by his deputy or jailer, until discharged by law."

Prior to its repeal by the thirty-seventh general assembly, Section 511, Subdivision 22, Code Supplement, 1913, provided:

"The jailer may be furnished a dwelling in connection with the jail, or as convenient thereto as practicable, in the discretion of the board of supervisors."

At the time of the events on which this action is based, there was no statute, and there is none now, providing for the employment of a jailer, as such, by the county, and no statutory provision for the furnishing of a residence to the jailer. The jailer was the deputy of the sheriff. Living quarters were provided by the county in the courthouse, available to the sheriff or his deputy, the jailer. Undoubtedly it was within the authority of the sheriff to determine and say who should occupy said living apartment, furnished by the county, as between himself and his deputy. The apartment furnished by the county in the courthouse for housing a family perhaps would not be as commodious and convenient as the residence which the sheriff and his family did occupy. But the fact that the county is required, under the statute, to pay only $300 in lieu of furnishing a place of residence, indicates that it was not contemplated that the county should furnish a palatial residence for the sheriff. The rooms furnished, which were occupied by the deputy sheriff, as jailer, consisted of a living room, bedroom, bathroom, a number of closets, an office room, and a large dormi-

tory, with heat, light, gas, and water provided, and accommodations for cooking, etc. There is no contention made that the quarters furnished were not a suitable and satisfactory place for the jailer and his wife to live, while performing the services required of them by the sheriff. The jailer was in fact performing a statutory duty of the sheriff's. We think that the quarters furnished, considering the statutory provision and the facts, were a suitable and satisfactory residence for the sheriff. The sheriff could have elected to occupy the apartment furnished in the courthouse himself, and act as jailer himself. The law imposed no obligations on the county to furnish a jailer for the sheriff, and the county did not furnish such jailer. The jailer was selected and employed by the sheriff and compensated by the sheriff. The board of supervisors had no authority to furnish a residence for the jailer. It did furnish residential quarters available to the sheriff, to be occupied by himself or a deputy. The sheriff might have occupied the apartment himself, or he could have a deputy act as jailer and occupy the apartment, which was done.

We think that, under the facts, appellant county furnished to appellee a residence, within the contemplation of the statute. We are constrained to hold that the trial court was wrong in finding otherwise. The case must be and is reversed.—*Reversed and remanded.*

FAVILLE, C. J., and EVANS and ALBERT, JJ., concur.